IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| GAIL TURNER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO: 2:12-CV-490 |
| | ) |
| MENARD, INC., d/b/a MENARDS, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment, filed by Defendant, Menard, Inc. d/b/a Menards ("Menards") on June 9, 2015. (DE #33). For the reasons set forth below, the Motion for Summary Judgment is **GRANTED.** The Clerk is **ORDERED** to enter judgment in favor of Defendant, Menard, Inc. d/b/a Menards and close this case.

BACKGROUND

Plaintiff, Gail Turner ("Turner"), was a customer at a Menards store located at 1000 U.S. Highway 41 in Schererville, Indiana. Turner alleges that she slipped and fell inside the store and suffered injuries as a result of her fall. On October 5, 2012, Turner filed a complaint against Menards in Indiana state court alleging that Menards was negligent in violation of Indiana law. Thereafter, the action was removed to federal court.

On June 9, 2015, Menards filed a motion for summary judgment arguing that Turner's claim must fail because she cannot demonstrate that Menards had either actual or constructive notice of a dangerous condition prior to her fall, or that the condition involved an unreasonable risk of harm. On July 21, 2015, Turner filed her response to Menards motion for summary judgment. On August 14, 2015, Menards filed its reply brief. This matter is now fully briefed and ripe for adjudication.

DISCUSSION

Standard

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable

inferences in that party's favor. *See Ogden v. Atterholt,* 606 F.3d 355, 358 (7th Cir. 2010). However, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003) (citations omitted).

A party opposing a properly supported summary judgment motion may not rely on allegations in his own pleading but rather must "marshal and present the court with the evidence [he] contends will prove [his] case." *Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651, 654 (7th Cir. 2010). "[I]nferences relying on mere speculation or conjecture will not suffice." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (citation omitted). If the non-moving party fails to establish the existence of an essential element on which he bears the burden of proof at trial, summary judgment is proper. *See Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006).

Facts[1]

On September 24, 2011, Turner entered the Menards store located in Schererville, Indiana, around 2:00 pm. (Turner Dep., D.E. #35-

---

[1] The facts in this case are largely undisputed and the Court has therefore relied heavily on the facts as presented in the section of Menards' brief titled "Material Facts not in Dispute," supplementing with the facts found in Turner's "Statement of Additional Material Facts" and editing where necessary.

3

2 at 3). Turner went to the store to purchase a door handle lock. (Turner Dep., D.E. #35-2 at 3-4).

Turner entered the store through the exit doors, near the checkout area. (Turner Dep., D.E. #35-2 at 5-6). She began walking down an aisle with bags of salt pellets stacked along the side for display. (Turner Dep., D.E. #35-2 at 6). As she walked, Turner was not looking at the ground. (Turner Dep., D.E. #35-2 at 7). Turner neared the end of the salt pellet display when she slipped and fell. (Turner Answers to Interrogatories, D.E. #35-3 at 2). Turner states that she did not recall feeling anything under her feet as she was walking or as she was falling. (Turner Dep., D.E. #35-2 at 7-8). However, after the fall, Turner noticed salt pellets on the floor in the area. (Turner Answers to Interrogatories, D.E. #35-3 at 2).

Turner does not know how the salt came to be present on the floor. (Turner Answers to Interrogatories, D.E. #35-3 at 3). Prior to Turner's fall, no agent or employee of Menards was made aware that there were salt pellets or any other substance on the floor where Turner fell. (Menards Answers to Interrogatories, D.E. #35-4 at 2-3).

Turner's fall was captured by a Menards surveillance camera. (Menards Answers to Interrogatories, D.E. #35-4, p. 2). The surveillance video shows the area of Turner's fall, beginning at 14:02:56 (CST) on September 24, 2011, and concluding at 15:03:47

4

(CST) on the same date.  (Menards Surveillance Video, D.E. #35-5).  Prior to Turner entering the store, from 14:02:56 (CST) through 14:33:25, several customers walk through the area where Turner fell.  (*Id*.).  The video does not depict any of these customers falling or slipping or anyone manipulating the stacks of salt pellets. (*Id*.).

At approximately 14:31:25 on the video surveillance camera, a customer in a red shirt appears and begins to load bags of salt into his cart.  (*Id*.).  The customer finishes loading bags of salt into his cart at approximately 14:33:03 and moves towards the checkout area.  (*Id*.).  Turner enters the store at approximately 14:33:37 and walks towards the rear of the aisle.  (*Id*.).  As Turner approached the area where the customer in the red shirt had been loading bags of salt, at approximately 14:33:44, the customer in the red shirt begins to move toward Turner, gesturing. (*Id.*) Turner falls at approximately 14:33:48.  (*Id*.).

Immediately after Turner's fall, the customer in the red shirt leaves the checkout line and places his cart in front of the area where he was loading salt and where Turner fell.  (*Id.*).  He then leaves the view of the surveillance camera. (*Id.*).  At approximately 14:34:28, the red-shirted customer reappears and returns to his cart. (*Id.*).  At 14:36:43, a Menards employee appears with a broom and dustpan. (*Id.*).

5

The surveillance footage depicts three cashiers within several feet of the area where Turner fell. (*Id.*). During the time in question, at least thirteen Menards employees are observed in the footage nearby the location where Turner fell. (*Id.*).

Analysis

Under Indiana law,[1] a plaintiff asserting a claim of negligence must prove that a duty was owed by the defendant to the plaintiff, that the duty was breached, and that the breach proximately caused plaintiff to suffer an injury. *Wabash Cnty. Young Men's Christian Ass'n, Inc. v. Thompson*, 975 N.E.2d 362, 365 (Ind. Ct. App. 2012) (citing *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004)). "[N]egligence cannot be inferred from the mere fact of an accident" nor may it "be established through inferential speculation alone." *Hale v. Cmty. Hosp. Of Indianapolis, Inc.*, 567 N.E.2d 842, 843 (Ind. Ct. App. 1991); *see also Miller v. Monsanto Co.*, 626 N.E.2d 538, 541 (Ind. Ct. App. 1993) ("All of the elements of a negligence action must be supported by specific facts designated to the trial court or reasonable inferences that might be drawn from those facts."). Because negligence cases are highly fact sensitive, it is rare that summary judgment is

---

[1] The parties do not dispute that Indiana substantive law applies to this diversity suit.

6

appropriate. *Thompson*, 975 N.E.2d at 365 (citing *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)). "Nevertheless, a defendant is entitled to judgment as a matter of law when the undisputed material facts negate at least one element of the plaintiff's claim." *Id*. (citing *Rhodes*, 805 N.E.2d at 385).

While an invitee[2] is on the premises, a landowner owes that person a "duty to exercise reasonable care for the invitee's protection." *Henderson v. Reid Hosp. and Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014). That duty is breached if the landowner:

> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> (c) fails to exercise reasonable care to protect them against the danger.

*Id*. at 315-16 (citing *Bell v. Grandville Coop., Inc.*, 950 N.E.2d 747, 749 (Ind. Ct. App. 2011) (quoting Restatement (Second) of Torts § 343 (1965))). The plaintiff carries the burden of proving each of these elements. *Hi-Speed Auto Wash, Inc. v. Simeri*, 346 N.E.2d 607, 608 (Ind. App. 1976); s*ee also Robinson v. Walmart Stores East, LP,* 2009 WL 127029, at *4 (S.D.Ind. Jan. 20, 2009).

---

[2] The parties do not dispute that Turner was a business invitee of Menards.

7

Under Indiana law, "an invitor is not the insurer of the invitee's safety, and before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012). Menards asserts that Turner's claim fails because she cannot demonstrate that Menards had either actual or constructive knowledge of the alleged salt on the floor. Turner concedes that she has no evidence that Menards had actual knowledge of salt pellets, but contends that Menards did have constructive knowledge of the salt pellets on the floor. More specifically, Turner asserts that "there is an abundance of evidence from which the jury could infer that the Defendant *should have known* of the presence of salt." (DE #40 at 4, emphasis in original).

There is constructive knowledge when a condition "has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Schulz*, 963 N.E.2d at 1144 (citing *Wal–Mart Stores, Inc. v. Blaylock*, 591 N.E.2d 624, 628 (Ind. Ct. App. 1992)). In *Schulz,* the designated evidence showed that the Plaintiff slipped on liquid at the back of the store. *Schulz*, 963 N.E.2d at 1143. A Kroger employee affidavit showed that ten minutes before Plaintiff's fall, the floor was clean and dry. *Id*. at 1145. Therefore, the evidence indicated that the time period for the

8

hazardous condition to have developed was ten minutes. *Id*. The Indiana Court of Appeals found that this was not enough time for the employer to have constructive notice. *Id*. The Court held that "short of imposing a strict liability standard or mandating an employee's presence in every aisle at all times, we conclude that there is no genuine issue of fact in the case before us that Kroger did not have constructive knowledge of the hazardous condition." *Id*.

Extending premises owners a reasonable time to discover a hazardous condition is a principle of constructive notice that has existed in Indiana appellate case law for decades. For example, in *Wade v. Three Sisters Inc.*, the Indiana Court of Appeals quoted the following:

> No Court has ever held that five minutes is sufficient *constructive notice* of a dangerous condition; to so hold would be to make the defendant an insurer. If that were the law, then every time it rained or snowed the owner of a large department store would have to employ a great many extra people for the sole purpose of inspecting every minute or every five minutes every entrance, aisle, corridor and stairway in the store, in order to instantly clean up and eliminate every wet or possibly slippery, or possibly dangerous condition and every puddle which might be found to exist anywhere in the store. Such a standard is not only unreasonable and unsupported by any authority, but is so absurd that it would bankrupt every large store owner…

9

*Wade v. Three Sisters, Inc.*, 186 N.E.2d 22, 25-26 (Ind. Ct. App. 1962) (quoting *Parker v. McCrory Stores Corp.*, 101 A.2d 377, 378 (1954)).

Turner's argument that a reasonable inference can be drawn that Menards had constructive notice of the salt is, in full, as follows:

> During the thirty minute time span in the surveillance footage, it does not appear that one employee of the Defendant examined the area where the incident occurred, despite that at least 13 employees are observed walking *near* the area of the fall. During the entire span of footage, while approximately 13 employees walk perpendicularly to the aisle where the Plaintiff fell, only 9 employees appear to walk down that aisle. Not one of those employees is observed looking down at, or inspecting, the area where the incident occurred, and appear rather to be traversing the area.
> At approximately 14:15:30 (CST) one cashier is observed standing within several feet of the location where Plaintiff fell. Shortly thereafter, at 14:16:22, the same cashier is standing and talking with another cashier, for approximately 1 minute. At 14:35 (CST), one cashier is standing nearby the area of the fall, but with her back towards the area. None of those employees' names have ever been disclosed to date, and no testimony or Affidavits have ever been submitted attesting that when any of these employees traversed the area, the substances (sic) was not present.
> One reasonable inference from the surveillance footage is that the Defendant simply failed to take reasonable steps to ensure its' (sic) premises were safe for its' (sic) invitees, or to inspect its' (sic) premises for conditions on the floor.

> Therefore Defendant's Motion for Summary Judgment should be denied.

(DE #40 at 4-5).

Here, the designated evidence shows that in the nearly 30 minutes before the red-shirted customer appeared and began loading bags of salt pellets, several Menards customers walked over the same area where Turner fell without exhibiting signs of slipping, falling, looking down at their feet, or otherwise exhibiting signs that there were small pellets on the floor or the area was hazardous. In addition, no person during this period is seen touching or manipulating the bags of salt pellets. Then, at 14:31:25, the customer in a red shirt appears and begins loading the bags of salt into his cart. At 14:33:03, the red-shirted customer leaves the area and moves into the checkout line. At 14:33:37, Turner enters the store and begins walking toward the area where the red-shirted customer had loaded the bags of salt. At 14:33:44, as Turner approached the area, the red-shirted customer began moving toward Turner, gesturing. Seconds later, at 14:33:48, Turner walks through the area where the customer in the red shirt had been loading salt, and falls. The red-shirted customer then leaves the checkout line and blocks the area where Turner fell with his cart. Shortly thereafter, a Menards employee appears holding a broom and dustpan.

Certainly, based on these facts, a reasonable jury could infer that the salt came to be on the floor as a result of the actions of the customer in the red shirt. This Court is, however, mindful that at this stage of the proceedings all reasonable inferences must be drawn in favor of the non-movant. The issue before this Court is not whether a reasonable jury could infer that the salt was on the floor as a result of the actions of the customer in the red shirt shortly before Turner's fall, but whether a reasonable jury could also infer, as Turner contends, that the salt was there prior to the man in the red shirt loading salt into his cart. Turner cites to no evidence from which such an inference could be drawn. Nothing about the presence of the Menards employees or their behaviors on the surveillance video suggests that the salt was present earlier.[2] The mere presence of the employees in the general area where the salt was later found following Turner's fall does not permit a conclusion that Menards failed to maintain its premises in a reasonable condition. The time period captured

---

[2] It should be noted, however, that Turner has pointed to facts in her argument that are not included in Menards' material facts and also not included in Turner's statement of additional material facts. Turner's statement of additional material facts provides only that there were three cashiers within several feet of the area of the fall and that thirteen employees are observed near the location of the fall. (DE #40 at 1). The facts in the body of the argument regarding the manner in which the 13 employees walked, how many employees walked down the aisle, and whether they looked down or inspected the area were not included in the statement of additional material facts. As a result, this Court has no obligation to consider them. N.D. Ind. L.R. 56-1(b). In this case, however, even assuming the accuracy of the facts presented in the body of Turner's response brief, the outcome is unaffected.

on video and presented to this Court is roughly 30 minutes prior to Turner's fall. If a more significant time period of surveillance had been submitted, perhaps such an inference could be drawn, but no reasonable jury could presume that Menards failed to maintain the premises in a reasonable condition based on such a short period of time.

Furthermore, as has already been noted, under federal summary judgment practice the burden to produce evidence to overcome summary judgment rests with Turner. The fact that none of the employees' names have been disclosed is irrelevant unless Turner requested them through discovery and Menards failed to produce them without justification. Then, the proper remedy was not to point out the lack of evidence at the summary judgment stage but to move to compel. Similarly, as the party moving for summary judgment, Menards did not have an obligation to present affidavits or testimony that the salt was not present when the employees traversed this area. Menards does not bear the burden of proving a lack of constructive knowledge.

Based on the evidence before this Court, any inferences of fact that could be drawn to indicate that salt pellets were on the floor prior to the customer in the red shirt loading salt into his cart would be based solely on conjecture or improper speculation. *Stephens*, 569 F.3d at 786 ("[I]nferences relying on mere speculation or conjecture will not suffice."). Turner has

produced no evidence from which a reasonable jury could make such an inference.  Because Turner has failed to satisfy her burden, her negligence claim against Menards must fail and summary judgment must be entered in favor of Menards.[3]

**CONCLUSION**

For the reasons set forth above, the Motion for Summary Judgment is **GRANTED**.  Because no claims remain pending, this case is **DISMISSED** and the Clerk is **ORDERED** to enter judgment in favor of Defendant, Menard, Inc., d/b/a Menards and close this case.

**DATED: March 31, 2016**              **/s/ Rudy Lozano, Judge**
                                       **United States District Court**

---

[3] As noted earlier, Menards also argued that it did not have knowledge that salt pellets would pose an unreasonable risk of harm.  Since the Court has found that Menards did not have constructive notice of the salt pellets as a matter of law, the Court need not address this issue.